UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SALMA H. KHAN,                              CASE NO. CV F 13-1378 LJO JLT

                        Plaintiff,          **ORDER ON DEFENDANTS' F.R.Civ.P. 12
                                            MOTION TO DISMISS**
                                            (Doc. 6.)

        vs.


CITIMORTGAGE INC., et al.,

                        Defendants.

_____/

## PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters.  This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff.  The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

## INTRODUCTION

Defendants CitiMortgage, Inc. ("CMI") and Wilmington Trust Company ("Wilmington") seek to dismiss as insufficiently pled and legally barred plaintiff Salma Khan's ("Ms. Khan's") claims arising from failed modification of her loan for her Bakersfield property

("property") and foreclosure of the property.   Ms. Khan filed neither papers to oppose dismissal of her claims nor an amended complaint as a matter of course, pursuant to F.R.Civ.P. 15(a)(1).   This Court considered CMI and Wilmington's (collectively "defendants'") F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the October 7, 2013 hearing, pursuant to Local Rule 230(g).   For the reasons discussed below, this Court DISMISSES this action.

## DISCUSSION[1]

### Ms. Khan's Property Loan And Default

On January 13, 2003, Mr. Khan borrowed from Golden Empire Mortgage $648,500, the promissory for which was secured by a deed of trust ("DOT") on the property.   In March 2010, Golden Empire Mortgage assigned the promissory note and DOT to CMI which later assigned its interests in the promissory note and DOT to Wilmington.   CMI acted as the loan's servicer and holder of the promissory note.

In September 2009, Ms. Khan failed to make loan payments and defaulted.   CMI recorded a notice of default on March 8, 2010 and a notice of trustee's sale on June 9, 2010 to set a June 30, 2010 sale.

### Loan Modification Attempts And Property Foreclosure

After her default, Ms. Khan applied to CMI to modify her loan during which CMI repeatedly postponed the trustee's sale.   During the loan modification process, CMI:

1.      Asked Ms. Khan routinely for documents she had submitted previously and repeatedly;

2.      Lost documents and claimed their non-receipt;

3.      Imposed deadlines for document submission which Ms. Khan could not meet due to CMI's fault; and

4.      Closed the file to require Ms. Khan to reinitiate loan modification.

During February 10, 2012 to May 14, 2012, CMI informed Ms. Khan that her application was in "underwriting" although no "underwriting" occurred.   During that same

---

[1]      The factual recitation generally summarizes Ms. Khan's operative complaint ("complaint").

period and specifically on May 14, 2012, CMI representatives responded to Ms. Khan's at least weekly telephone inquiries that her loan modification was "open and under review" and that the May 15, 2012 foreclosure sale will be postponed.

CMI purchased the property at a May 15, 2012 trustee's sale and later transferred its interest in the property to Wilmington.  CMI informed Mr. Khan that the sale was a mistake and promised to rescind it.

In January 2013, an unlawful detainer proceeding was initiated against Ms. Khan.

On May 24, 2012, CMI assigned its interest in the DOT to Wilmington by an assignment of deed of trust recorded on May 29, 2012.

In February 2013, unlawful detainer proceedings against Ms. Khan resumed.  Ms. Khan vacated the property after she was served with a notice to vacate prior to June 26, 2013.

### Ms. Khan's Claims

The complaint alleges breach of contract, fraud, negligence and related claims which will be discussed below.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion to Dismiss Standards

Defendants challenge the complaint's claims as insufficiently pled and conclusory.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536

3

F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that

4

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to defendants' challenges to the complaint's claims.

### **Promissory Estoppel**

The complaint's (first) promissory estoppel claim alleges that:

1.     During February 2012 to May 14, 2012, defendants as least once a week promised Ms. Khan that her loan modification application "was open, active and under review," and that the May 15, 2012 trustee's sale "will be postponed";

2.     On May 14, 2012, Ms. Khan was "promised one last time that the next day's sale would be postponed"; and

3.     Ms. Khan reasonably relied on "these promises" and "would have taken protective action to save her house from foreclosure" by, for instance, filing an action seeking injunctive relief, borrowing reinstatement funds from relatives, or filing bankruptcy.

5

*Oral Agreement*

Defendants contend that an oral agreement to postpone foreclosure is unenforceable to defeat the promissory estoppel claim.

"As a general rule, a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly mortgage payments is unenforceable."  *Garcia v. World Sav., FSB*, 183 Cal.App.4th 1031, 1039, 107 Cal.Rptr.3d 683 (2010).  In *Clark v. Countrywide Home Loans, Inc.*, 732 F.Supp.2d 1038, 1043-1044 (E.D. Cal. 2010), a fellow judge of this Court addressed oral representations as to real property:

> Certain types of contracts are invalid unless memorialized by a written document signed by the party against whom the contract is being enforced. Cal. Civ. Code § 1624.  Mortgages and deeds of trust are subject to the statute of frauds. *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 167 Cal.App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008). "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds" and must be in writing. *Id.* at 553, 84 Cal.Rptr.3d 275; *see also Basham v. Pac. Funding Group*, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim that defendant breached an oral contract to provide plaintiffs with a loan modification because, under the statute of frauds, "absent a writing, there can be no contract, much less a breach of contract."); *Justo v. Indymac Bancorp, et al.*, 2010 WL 623715 (E.D. Cal. Feb. 19, 2010) (plaintiff's claim that defendants breached an oral contract to modify his loan and cancel the foreclosure sale was barred by the statute of frauds). A written contract may not be modified by an oral agreement, unless that oral agreement is memorialized in writing and signed by the parties. Cal. Civ. Code § 1698.

> Here, the alleged promise for a loan modification is subject to the statute of frauds. Absent a written agreement to modify the loan, **any claim based upon an oral contract to modify the loan is barred** by the statute of frauds. *See Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275.  (Bold added.)

"A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of

frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d 275. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275; *see Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 121, 92 Cal.Rptr. 851 (1971) ("The purported oral agreement is unenforceable. No damages can arise as a consequence of its alleged breach.")

The record reveals no written agreement to modify Ms. Khan's loan or to forego foreclosure of the property. The complaint's facts and inferences are that no more than oral statements were made to Ms. Khan. In the absence of a written agreement to modify her loan or to forego foreclosure, the statute of fraud bars the promissory estoppel claim. This Court construes the absence of Ms. Khan's opposition as her concession that the promissory estoppel claim is barred.

### *Justifiable Reliance*

Defendants further contend that the complaint lacks sufficient facts to support promissory estoppel elements.

Under the promissory estoppel doctrine, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 249, 74 Cal.Rptr. 398 (1969). Promissory estoppel elements are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 891, 131 Cal.Rptr. 836 (1976); *see Toscano v. Greene Music*, 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (2004).

Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal.3d 665, 672,111 Cal.Rptr. 693 (1974). "[P]romissory estoppel claims are aimed solely at allowing recovery in equity where a

7

contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract . . . ." *US Ecology, Inc. v. State*, 129 Cal.App.4th 887, 904, 28 Cal.Rptr.3d 894 (2005). "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Garcia v. World Sav., FSB*, 183 Cal.App.4th 1031, 1041, 107 Cal.Rptr.3d 683 (2010).

Defendants fault the complaint's absence of facts to support that Ms. Khan relied on CMI's "purported statements concerning the postponement of the foreclosure sale." Defendants point to complaint allegations that CMI closed its file or denied modification to suggest Ms. Khan's "actual knowledge" of the upcoming foreclosure sale. Defendants characterize Ms. Khan to have foregone "action she deemed necessary to avoid the foreclosure sale" to render unreasonable or unjustified her alleged failure to reinstate the loan after receipt of multiple denials of modification.

Defendants raise valid points. Nothing in the record suggests that Ms. Khan's reliance on a loan modification or postponement of foreclosure was merited. She remained obligated on her promissory and DOT. The complaint reveals that she remained on the property without making payments for more than three years. The complaint lacks facts to invoke equitable principles to grant Ms. Khan a further windfall in connection with her default. The promissory estoppel claim is subject to dismissal with prejudice.

### **Fraud**

The complaint's (second) fraud claim alleges that:

1.     Defendants' practice as to instruct "employees to respond to telephone status inquiries from borrowers with standard answers irrespective of whether those answers were or were not true";

2.     The responses included: "You are missing documents"; "You are under review"; and "You are in underwriting."

3.     Such misrepresentations were intended "to delay and drag out the modification process" to accomplish CMI's goals "to modify as few loans as possible" and to avoid government regulators' scrutiny; and

4.     Ms. Khan "never received denial of her loan modification, demonstrating that [her] modification application never was in underwriting and the statement "you are in

8

underwriting and under review" was false.

Defendants fault the complaint's failure to allege fraud elements with sufficient particularity.

### Elements

Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843 (1997).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### Particularity Pleading Standard

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[2] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[3] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for

---

[2]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original))

failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

---

[3]    "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).  "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

### *Misrepresentation*

Defendants point to the complaint's absence of facts of their misrepresentations in that

the complaint alleges that CMI postponed foreclosure, that Ms. Khan was denied modification, and that the foreclosure sale occurred after denial of her applications.  Defendants further fault the complaint's failure to identify CMI representatives who made misrepresentations, their authority to speak, the date of misrepresentation, and similar required details.

Defendants are correct that the complaint lacks sufficient facts to support the misrepresentation element.  The complaint fails to support with facts a misrepresentation and merely concludes that representations as her modification application are false.  The complaint identifies no person making alleged misrepresentations with required specificity to hold defendants accountable.  The complaint fails to substantiate the misrepresentation element.

### Intent To Defraud

Defendants challenge the absence of facts to support defendants' intent to defraud in that the complaint alleges that CMI foreclosed on the property after three years of loan modification applications and multiple denials.  Defendants further question an intent to defraud give that Ms. Khan was allowed to remain on the property for three years without making a payment during the loan modification process.

The complaint lacks facts of defendant's intent to defraud, and Ms. Khan offers nothing to support intent to defraud.  Allegations of delay and avoiding regulators' scrutiny fail to substantiate intent to defraud.  The complaint lacks facts to satisfy F.R.Civ.P. 9(b) specificity as to intent.

### Justifiable Reliance

Defendants fault the absence of facts to support Ms. Khan's reliance on CMI's statements of foreclosure sale postponement.  Defendants point to complaint allegations that CMI closed its file or denied modification to suggest Ms. Khan's "actual knowledge" of the upcoming foreclosure sale.  Defendants characterize Ms. Khan to have foregone "action she deemed necessary to avoid the foreclosure sale" to render unreasonable or unjustified her alleged failure to reinstate the loan after receipt of multiple denials of modification.  *See Cameron v. Cameron*, 88 Cal.App.2d 585, 594, 199 P.2d 443 (1948) ("If [one] becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he

12

has no right to rely on statements of the other contracting party.")

Similar to the discussion on promissory estoppel, nothing suggests that Ms. Khan's reliance on a loan modification or postponement of foreclosure was justified, especially since she remained obligated on her promissory and DOT. The complaint's allegations that Ms. Khan was under review or in underwriting coupled with delay demonstrate grounds to arouse suspicion or to disbelieve the potential for loan modification or foreclosure sale postponement. The complaint suggests that Ms. Khan was on notice of problems to frustrate the notion of her justifiable reliance. The complaint lacks facts alleged with sufficient specificity to support Ms. Khan's justifiable reliance.

In short, the complaint lacks a viable fraud claim to warrant its dismissal with prejudice.

## **Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

The complaint's (third) breach of the implied covenant of good faith and fair dealing ("implied covenant") claim alleges that Ms. Khan's promissory note and DOT imposed on CMI the duty of good faith and fair dealing. The implied covenant claims accuses CMI of:

1.    Not assisting Ms. Khan with loan modification;

2.    Delaying "the modification for two years during which time it falsely represented to [Ms. Khan] that her application was in underwriting and under review when it was not";

3.    Engaging in further delay by "claiming that necessary documents were missing from the file" although Ms. Khan timely "provided all requested documents";

4.    Lacking ability to honor its agreement with Wilmington to assign CMI's interests in the DOT and its agreement with Ms. Khan in that CMI negotiated the assignment during the loan modification process;

5.    Agreeing implicitly to evaluate honestly and fairly Ms. Khan's loan modification application to impose on CMI "all obligations and duties incumbent upon any party to a contract to honestly and fairly treat [Ms. Khan] in good faith under the obligations provided in the Note and Deed of Trust"; and

6.    Foreclosing without making a final decision on loan modification.

Defendants challenge the absence of facts to support an implied covenant claim.

"There is an implied covenant of good faith and fair dealing in every contract that

13

neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The covenant of good faith and fair dealing is implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed." *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1147, 271 Cal.Rptr. 246 (1990).

"The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031, 14 Cal.Rptr.2d 335 (1992). "There is no obligation to deal fairly or in good faith absent an existing contract." *Racine & Laramie*, 11 Cal.App.4th at 1032, 14 Cal.Rptr.2d 335. The "implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza*, LLC, 159 Cal.App.4th 784, 799, 71 Cal.Rptr.3d 885 (2008).

A breach of implied covenant of good faith and fair dealing claim "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted). The "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those

14

incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).  Moreover, although the implied covenant particularly applies when a party has discretionary power affecting rights of another party, "the implied covenant does not trump an agreement's express language."  *Steiner v. Thexton*, 48 Cal.4th 411, 419-420, 226 P.3d 359 (2010).

Defendants fault the complaint's absence of allegations that "the loan requires CMI to agree to the modification."  Defendants note CMI's contractual right to foreclose under the DOT and Ms. Khan's admitted default.

The complaint lacks a specific contractual obligation on which to premise an implied covenant claim.  In the absence of a tangible breach of contract claim, the complaint lacks facts to demonstrate defendants' failure or refusal to discharge contractual responsibilities, prompted by a conscious and deliberate act.  The implied covenant claim improperly seeks to impose on defendants obligations beyond the scope of a purported agreement to modify Ms. Khan's loan or to forego foreclosure.  The DOT permits foreclosure and thus no implied covenant prohibited defendants from doing that which the DOT permitted to remedy Mr. Khan's default.  The implied covenant claim is subject to dismissal with prejudice in the absence of Ms. Khan's attempt to support it.

### Unlawful Business Practices

The complaint's fourth claim proceeds under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq., to allege that defendants "have committed acts of unfair competition" by:

1.     Leading borrowers "to believe that they were being fairly considered for loan modifications when in fact [CMI] had an internal policy to deny loan modifications whenever possible;

2.     Promising borrowers routinely "that their loans were in underwriting and under review and then . . . foreclosing without even rendering an underwriting decision"; and

3.     "[T]racking all defaulted borrowers for foreclosure at the same time they were being considered for loan modifications with the intent to eventually foreclose whenever possible rather than providing borrowers the ability to repay their loans under modified terms."  The UCL claim characterizes such practices as unlawful and unfair to deny borrowers "the

opportunity to fairly and honestly repay their debt" to CMI.

### Standing

The complaint fails to allege that Ms. Khan suffered an injury cognizable under the UCL to establish her standing.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."  "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471–72 (2008)."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.  (Bold added.)

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'"  *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

The complaint lacks facts of Ms. Khan's money or property allegedly lost in that she was obligated to pay her loan and faced foreclosure if she failed to meet her obligations. Foreclosure of the property fails to support a UCL claim in the absence of allegations of the Ms. Khan's performance to avoid default.  The complaint lacks facts to support Ms. Khan's standing to seek UCL relief to warrant dismissal of the UCL claim.

### Unlawful, Unfair Or Fraudulent Practice

Defendants further fault the complaint's failure to allege a predicate violation of law to

support a UCL claim.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale*, 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins.*, 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010).

Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat. (US), Inc.,* 83 Cal.App.4th 488, 494, 99 Cal.Rptr.2d 721 (2000).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999). A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted). The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005). A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

Defendants argue that the complaint lacks a UCL claim in the absence of facts of violation of law, unfairness or fraud. Defendants challenge the complaint's failure "to establish a predicate unlawful, unfair or fraudulent business practice."

The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite Ms. Khan's unsubstantiated claims of misleading borrowers and denying opportunity to repay their debt.  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim.  The complaint's UCL claim fails with its other claims and is subject to dismissal with prejudice.

### Negligence

The complaint's (fifth) negligence claim alleges that defendants:

1.      Negligently handled Ms. Khan's loan modification application "when they acted in contravention of their promises to rescind the foreclosure sale";

2.      Breached their duty to handle fairly and honestly Ms. Khan's loan modification application "by stringing [Ms. Khan] along throughout the loan modification approval process, requesting duplicative documentation, losing documentation and all the while following a policy that is geared toward denying loan modification applications";

3.      Breached the "duty to evaluate [Ms. Khan's] loan modification swiftly so as to avoid the pending Trustee's sales"; and

4.      "[F]ailed in its duty to [Ms. Khan] by delaying the underwriting procedure" that had been promised.

Defendants challenge the complaint's failure to allege an actionable duty to support a negligence claim.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart Fed. Sav. & Loan Assn*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991).   "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant."  *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."  *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use

19

ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length.   A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases).   "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal.Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.   The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had").   "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).   Moreover, "loan servicers do not owe a duty to the borrowers of the loans they service." *Shepherd v. American Home Mortg. Services, Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. 2009); *see Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. 2010) ("a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer").

Turning to loan modification, "[n]umerous cases have characterized a loan modification as a traditional money lending activity, warranting application of the rule articulated in *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 283 Cal.Rptr. 53 (1991), that a

financial institution in general owes no duty of care to a borrower."  *Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. 2012).  In *Alvarado v. Aurora Loan Services, LLC*, 2012 WL 4475330, at *6 (C.D. Cal. 2012), a fellow district judge explained:

> . . . offering loan modifications is sufficiently entwined with money lending so as to be considered within the scope of typical money lending activities. If money lending institutions were held to a higher standard of care by offering a service that could benefit borrowers whose circumstances have changed, the money lender[s] would be discouraged from leniency and would assert their rights to reclaim the property upon the borrower's default. The conventional-moneylender test shall be sufficient to determine that there is no duty of care owed in servicing Plaintiff's mortgage loan and loan modification. As the Plaintiff is unable to establish a duty, it is unnecessary to discuss the elements of breach, causation, and damages.

Defendants fault the complaint's absence of facts to support its actionable duty owed to Ms. Khan and in turn breach of such duty to cause damage.  Defendants note that Ms. Khan's "mere desire to obtain a loan modification cannot serve as a basis" to support a negligence claim.

The complaint insufficiently attempts to allege defendants' cognizable duty of care let alone its breach.  Ms. Khan lacks a negligence claim based on defendants' lender and/or servicer roles, particularly in the absence of a duty to forego foreclosure or to provide loan modification.  "No such duty exists . . . to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's."  *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan").  "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower."  *Sierra-Bay Fed.*, 227 Cal.App.3d at 334, 277 Cal.Rptr. 753.  CMI had "no interest in the loan" in its role as loan servicer.  *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *3 (S.D. Cal. 2009).

Defendants owed no actionable duty of care to Ms. Khan arising from her dissatisfaction with a loan modification.  The complaint lacks facts of special circumstances to impose duties on defendants in that the complaint depicts an arms-length transaction, nothing

21

more.   The complaint fails to substantiate a special lending or other relationship or an actionable breach of duty to substantiate a negligence claim.  The negligence claim fails and is subject to dismissal with prejudice.

### Quiet Title

The complaint's (sixth) quiet title claim seeks to quiet the property's title in favor of Ms. Khan over Wilmington.  The quiet title claim alleges that the May 15, 2012 trustee's sale is "voidable" in that CMI as Wilmington's agent and predecessor "engaged in unfair competition by routinely acting in bad faith in evaluating [Ms. Khan] for a loan modification while following an internal policy to foreclose on [Ms. Khan's] Property instead of fairly and honestly considering [Ms. Khan] for a loan modification."

Defendants challenge the quiet title claim as legally barred in the absence of Ms. Khan's legitimate tender of amounts owed on her loan.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein."   California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

 1. A legal description and street address of the subject real property;

 2. The title of plaintiff as to which determination is sought and the basis of the title;

 3. The adverse claims to the title of the plaintiff against which a determination is sought;

 4. The date as of which the determination is sought; and

 5. A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., § 760.030.

The complaint lacks facts as to the title of which Ms. Kham is legally entitled to determination and the basis of Ms. Khan's purported title given her inability to tender amounts due on their loan.  A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust."

*See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that Ms. Khan is the property's rightful owner and has satisfied DOT obligations. The complaint alleges Ms. Khan made no loan payments for three years. The complaint lacks a properly pled quiet title claim.

Moreover, a purported quiet title claim is doomed in the absence of tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt. The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901). "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney v. Downey Savings & Loan Ass'n*, 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (2003).

Ms. Khan is unable to re-acquire good title to the foreclosed property without paying or tendering her outstanding indebtedness. With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails. This Court is not in a position to award Ms. Khan a windfall.

Lastly, defendants are correct that the foreclosure sale extinguished Ms. Kham's interest in the property. "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final

bid." *Nguyen*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436.  In the absence of alleged facts to support quieting title in favor of Ms. Khan, the quiet title claim fails and is subject to dismissal with prejudice.

## CONCLUSION AND ORDER

The complaint's claims are insufficiently pled and legally barred.  Ms. Khan neither attempts to oppose dismissal of the complaint's claims nor suggests additional facts to attempt to support the claims.  Nothing is apparent to resurrect the complaint's claims.  As such, this Court:

1.      DISMISSES this action with prejudice; and

2.      DIRECTS the clerk to enter judgment in favor of defendants CitiMortgage, Inc. and Wilmington Trust Company and against plaintiff Salma H. Khan and to close this action.

IT IS SO ORDERED.

Dated:   __September 30, 2013__          ___/s/ Lawrence J. O'Neill___
                                        UNITED STATES DISTRICT JUDGE